UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA HART | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 1299 CDP |
| | ) | |
| NATIONWIDE MUTUAL INS. CO., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Patricia Hart was an office manager for Nationwide Mutual Insurance Company from July 28, 1996, until September of 1998, when she began disability leave. She received long-term disability benefits from Nationwide until July of 2013, when she sought pension benefits under the Nationwide Retirement Plan (the Plan). She was initially given an estimate of pension benefits, but then told eight days later that she was not eligible to receive them. After unsuccessfully appealing this decision to the Plan's administrator, Hart filed the instant action against Nationwide under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* (ERISA), seeking either unpaid benefits or equitable relief. Nationwide now moves for summary judgment on both counts of the complaint, and the issues are fully briefed. Because Hart is not a participant in the Plan as a matter of law, summary judgment will be granted in favor of Nationwide.

## Standards Governing Summary Judgment

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *ASi Industries GmbH v. MEMC Electronic Materials, Inc.*, 2008 WL 413819, *1 (E.D. Mo. Feb. 13, 2008).

## Undisputed Background Facts

The Plan is a defined benefit pension plan covering eligible employees of Nationwide and is governed by ERISA. Only those employees meeting the Plan definition of "participant" are eligible for benefits. The Plan defines "participant" to mean "employee(s) or former employee(s)" who meet the eligibility

requirements.  "Employee" is in turn defined by the Plan as "a person performing services for a Participating Employer, excluding the following: (a) NADP-NAPB-FADP Agent." (emphasis supplied).  "NADP-NAPB-FADP Agent" is, according to the Plan, "an individual who is a participant in, or a staff member of any participant in, any new agents' development plan maintained by one or more of the Participating Employers or Non-Participating Employers."

Hart was hired as an agency office manager for John Sicola, an agent in Nationwide's Financed Community Agent Program (FCA program), in 1996. There is no signed employment or agent agreement.  Hart's job classification was "financed agency staff" or "agency staff."  Through the FCA program, Nationwide hired agents and their staff for a limited training period, until the agent either successfully completed the program and became an independent contractor agent or was fired.  Thus, Hart was a "staff member" of an agent in a "new agents' development plan," not an "employee" or "participant" in the Plan.[1]

Sicola's employment with Nationwide was terminated on April 14, 1997, but Hart remained in the office and kept it open while Nationwide found another agent to take over.  Hart was also a licensed agent for Nationwide, but her job

---

[1] Hart does not dispute that the job classifications of "agency office manager," "financed agency staff," and "agency staff" are used only by Nationwide "for employees who are either agents in a new agent development program or their staff." [Aff. of Rick Swinehart Doc. #21-6 at 2].

classification never changed during her employment.[2] Four months later Larry Blanco, who was also part of the FCA program, replaced Sicola.

Hart worked for Nationwide until September of 1998, when she applied for – and obtained – long-term disability benefits[3] under a specific benefits package available only to "financed agency staff."[4] These benefits were not paid under the Plan. Hart never returned to work for Nationwide, but she received disability payments under this special benefits package for 15 years, until she turned 65. It is undisputed that, if Hart were entitled to pension benefits as a participant under the Plan, she would not have been entitled to receive disability payments under the benefits package available only to "financed agency staff."

While she was on disability leave, Hart received Summary Annual Reports and Annual Funding Notices about the Plan. She also received form letters about the Plan addressed to "Dear Nationwide Plan Participant."

When Hart turned 65, her disability benefits ended. At that time, Hart decided to retire and applied for pension benefits under the Plan. This decision

---

[2] Even if she had been an agent under the FCA program during this time, she still would not have been eligible for benefits under the Plan.

[3] In her affidavit for disability benefits, Hart claimed that she was disabled by "gradual decrease in mobility and increase in pain from neck, shoulder, arm and hand." [21-5 at 34].

[4] To obtain these benefits, Hart completed a "Nationwide Insurance Companies Financed Agency Staff Enrollment Card," which she signed and dated November 25, 1996. [21-5 at 44]. Her annual benefits paperwork for 1998 also shows that she was receiving life insurance and disability coverage "under the Fin Agent/Staff LTD option." This paperwork summarizes her current and future coverages and does not say anything about a pension benefit. [21-5 at 46-51].

was prompted by a letter she received in August of 2013 entitled "Nationwide Retirement Plan Pension Suspension Notice," which contained "important information related to [her] benefit payable" from the Plan. The letter informs Hart that, normally she "would be entitled to a benefit from [the Plan] when [she] reach[ed] age 65," but that she would not be entitled to receive these benefits because she was "working past [her] normal retirement date." The letter instructs Hart to contact the Nationwide Pension Center when she retires so that she could start receiving benefits at that time. The Nationwide Pension Center is Aon Hewitt, a third-party pension administrator responsible for providing pension estimates and processing applications for benefits under the Plan. Hart contacted Hewitt about the letter, told them she was retiring, and was sent a "pension packet" in response. The packet is dated October 1, 2013, and includes a "Retirement Plan Pension Calculation Statement" indicating that Hart could be entitled to a pension benefit of up to $640.32 per month. However, before she made any benefit election, Hart was contacted by Hewitt on October 9, 2013, and told that she was not eligible for a pension benefit under the Plan.

It turns out that Hart had received the letter and pension packet in error because of a record-keeping mistake.[5] When Nationwide updated its computerized records back in 2001, Hart was erroneously assigned a "participation date" in the

---

[5] This same mistake likely explains Hart's receipt of Plan summaries as well, as these documents would normally only be sent to Plan participants.

5

Plan's benefits tracking system. This internal error was compounded when Nationwide transferred its records to Hewitt's electronic data base. Therefore, Hewitt's system incorrectly showed Hart was eligible for a pension benefit under the Plan. This error was explained to Hart by Rick Swinehart, Director of Nationwide's Service Center, on October 17, 2013. Swinehart is responsible for assisting Nationwide employees with retirement issues and investigated the record-keeping errors that led to the mistake. Hart was upset and sent Swinehart the Plan summaries and other documents she received over the years, claiming they led her to believe that she was entitled to pension benefits under the Plan. Hart also argued that her employment classification might have changed when Blanco was hired.

Swinehart investigated Hart's allegations and verified that her employment classification as "financed agency staff" had not changed with the hiring of Blanco or at any time thereafter. Because Hart remained ineligible for Plan benefits, Swinehart issued Hart a denial of benefits letter on November 1, 2013. Hart appealed the decision to the Plan Administrator. In considering Hart's appeal, the Plan Administrator reviewed information from Swinehart about Hart's employment classification and the record-keeping error, an appeal letter submitted by Hart's attorney, communications sent to Hart while she was on disability leave (including the Plan summaries and documents), the letter and pension packet sent

6

to Hart by Hewitt, and Swinehart's November 1, 2013, letter. The Plan Administrator then denied Hart's appeal, explaining again that as "financed agency staff" she was "specifically excluded from participating in the Plan." This lawsuit followed.

Hart's complaint states two counts under ERISA. In Count I, Hart challenges the decision to deny benefits under 29 U.S.C. § 1132(g) and seeks payment of unpaid and future benefits under the Plan. In Count II, Hart alleges that Nationwide breached its fiduciary duty as Plan Administrator under 29 U.S.C. § 1104 by misrepresenting to her that she was owed benefits. She seeks equitable relief under 29 U.S.C. § 1132(a)(3), including specific performance, equitable estoppel, and surcharge.

## Discussion

Nationwide first argues that it is entitled to summary judgment on both counts of the complaint because Hart lacks statutory standing to bring claims under ERISA. According to Nationwide, because Hart is excluded from participation in the Plan by its plain language, she cannot seek payment of benefits or equitable relief under ERISA as a matter of law. Hart does not address this argument in opposition to summary judgment.

To bring a civil action under ERISA, a plaintiff must have statutory standing. *Hastings v. Wilson*, 516 F.3d 1055, 1060 (8th Cir. 2008). To have

7

statutory standing a plaintiff must be "a participant, beneficiary or fiduciary" of the ERISA plan. *Id.* (quoting 29 U.S.C. § 1132(a)(2)). "A participant or a beneficiary is defined in ERISA as someone 'who is or may become eligible to receive a benefit of any type from an employee benefit plan.'" *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir. 1995) (quoting 29 U.S.C. §§ 1002(7), (8)). The United States Supreme Court has interpreted the statutory term "participant" to mean "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989).

The undisputed facts in this case demonstrate that Hart is not a Plan participant as a matter of law.[6] The Plan excludes "an individual who is a participant in, or a staff member of any participant in, any new agents' development plan" from the class of employees eligible to participate in the Plan. Hart's job classification was "financed agency staff" throughout the entirety of her employment. This was the employment designation given to her when she started with Nationwide in 1996, and it did not change after Sicola was fired or Blanco replaced him. Nationwide classifies "financed agency staff" as "staff member(s) of a participant in a new agents' development plan." Thus, Hart was excluded

---
[6] Hart does not argue that she is a beneficiary or fiduciary of the ERISA plan.

8

from the definition of "employees" who are "participants" entitled to benefits under the Plan. "'[I]t is well established that employers may exclude categories of employees from their ERISA plans.'" *Bendsen v. George Weston Bakeries Distribution Inc.*, 4:08CV50 (JCH), 2008 WL 4449435, at *4 (E.D. Mo. Sept. 26, 2008) (quoting *Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405, 1409 (10th Cir. 1988)).

Even if Hart thought she was a covered employee under the Plan, her subjective belief is not sufficient to create a triable issue of material fact, especially where – as here – she has admitted all facts set out in Nationwide's Statement of Uncontroverted Material Facts, including those relating to her job classification. *See* Plf.'s Response in Opposition to Def.'s Motion for Summ. J. at 1 ("Plaintiff admits all facts set forth in Defendant's Statement of Uncontroverted Material Facts . . . ."). [22]. Moreover, although there is no signed employment or agency agreement to evidence her job classification, Hart completed paperwork to become eligible for benefits available specifically for "financed agency staff." To obtain these benefits, Hart completed a "Nationwide Insurance Companies Financed Agency Staff Enrollment Card," which she signed and dated November 25, 1996. Her annual benefits paperwork for 1998 (the last year she worked before going on disability leave) also shows that she was receiving life insurance and disability coverage "under the Fin Agent/Staff LTD option." This paperwork summarizes

9

her current and future coverages and says nothing about a pension benefit. Two years after starting her job at Nationwide, Hart sought long-term disability benefits under this benefits package, and these benefits were paid to her for 15 years until they expired at age 65. There is no dispute that if Hart were considered a "participant" as defined by the Plan, she would not have been entitled to receive these long-term disability payments under this special benefits package.

The analogous case of *Bendsen v. George Weston Bakeries Distribution Inc.*, 4:08CV50 (JCH), 2008 WL 4449435, at *4 (E.D. Mo. Sept. 26, 2008), is instructive. In *Bendsen*, plaintiffs were distributors of defendant's wholesale bakery products and considered independent contractors, not employees, of defendant. *Id.* at *3. Although defendant offered a defined benefit plan to its employees, the plan's language excluded independent contractors from the definition of employees eligible to participate. *Id.* Because plaintiffs were independent contractors, they were denied benefits under the plan. *Id.* Plaintiffs then brought a claim under ERISA, alleging that defendant had wrongfully denied them benefits under the Plan. *Id.* at *2. The Court dismissed plaintiffs' ERISA claims for lack of statutory standing, reasoning that because plaintiffs were excluded from the Plan's definition of employees entitled to participate in the Plan, they were not "participants" with standing to sue under ERISA. *Id.* at *4. It held: "Plaintiffs thus lack standing to bring an action under ERISA, as they are not,

employees in, or reasonably expected to be in, currently covered employment, or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Id.* (internal quotation marks and citations omitted).

The same is true in this case. Because Hart was not a Plan participant, she lacks standing to bring an ERISA action, as she is not an "employee[] in, or reasonably expected to be in, currently covered employment, or [a] former employee[] who [has] . . . a reasonable expectation of returning to covered employment or who [has] a colorable claim to vested benefits." *Firestone Tire & Rubber Co.,* 489 U.S. at 117 (internal quotation marks and citations omitted). Although the Eighth Circuit Court of Appeals has recognized a narrow exception to *Firestone Tire & Rubber Co.*'s standing requirement in cases where, "but for the employer's conduct alleged to be in violation of ERISA, the employee or former employee would be a plan participant," *Adamson*, 44 F.3d at 654, this exception does not apply here. Any alleged misrepresentations to Hart regarding her participation in the Plan through receipt of Plan documents and a pension packet do not change her undisputed job classification and corresponding exclusion from the Plan. *See Bendsen*, 2008 WL 4449435, at *4. Without statutory standing, Hart cannot maintain her ERISA claims as a matter of law. Nationwide's motion for summary judgment will be granted.

Conclusion

Hart was "financed agency staff" and, as such, is excluded from participation in the Plan. Although Hart is not eligible for Plan benefits, she did receive substantial payments under a benefits package made available to her specifically because she was not a Plan participant. While an unfortunate mistake was made and the Court can certainly sympathize with Hart's position, Hart nevertheless does not have standing to pursue her claims under ERISA as a matter of law. For this reason, I need not, and therefore do not, address Nationwide's remaining arguments on the merits of Hart's claims. Summary judgment will be entered in favor of Nationwide on both counts of the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Nationwide's motion for summary judgment [20] is granted, and defendant shall have summary judgment on plaintiff's complaint, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of March, 2016.